IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ABRAHAM GARCIA AND SONIA GARCIA,<br><br>Plaintiffs,<br><br>vs.<br><br>GOLDEN EAGLE EXPLORATION, DECCA CONSULTING, LLC, AND EDWARD G. SCOTT,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:07-CV-964 TS |

I. Introduction

Plaintiff Abraham Garcia (Garcia) was injured in an oil well-drilling accident near Moab, Utah. Defendant Golden Eagle Exploration (Golden Eagle) owned and operated the oil well where Garcia was injured. Golden Eagle contracted with non-party DHS as an independent contractor to provide the drill rig and drilling crew for the well under a Daywork Drilling Contract. Garcia worked for DHS. Golden Eagle also hired Defendant Edward Scott (Scott), through Scott's company E. Scott Holdings, Inc. to work on the well. Golden Eagle obtained Scott's name from Defendant Decca Consulting, Inc. (Decca).

1

All three Defendants move for summary judgment. The Court grants summary judgment in favor of Decca as it has shown that there are no genuine issues of material fact that would support a finding that it is liable under the retained control or any other doctrine. The Court denies summary judgment as to Scott and Golden Eagle because there are genuine disputes of material facts.

## II. Standard for Summary Judgment

> "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.[1]

After the Defendants filed their summary judgment motions in this case, the 2010 Amendments to the Federal Rules of Civil Procedure became effective. Under the new version:

> The summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and the amendment made one word change from the previous version--genuine "issue" became genuine "dispute." But the "standard for granting summary judgment remains unchanged."[2]

In considering the summary judgment motions, the Court examines "the record and all reasonable inferences that might be drawn from it in the light most favorable to the

---

[1] *Harris v. Matthews*, 2011 WL 1108799, at *2 (10th Cir. Mar. 28, 2011) (quoting Fed. R. Civ. P. 56(a) additional citation and quotation marks omitted).

[2] *Lincoln General Ins. Co. v. Smith*, 2011 WL 1058451, at *2 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56 advisory committee note (2010 Amendments)).

non-moving party."[3] "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue. An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'"[4]

> Under Rule 56(c), the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. In our circuit, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment. Once this burden is met, Rule 56(e) requires the non-moving party to set forth specific facts showing there is a genuine issue for trial. Even when, as here, the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law. The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial[5]
>
> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.[6]

As the Tenth Circuit recently explained, local rules requiring the parties to identify facts that a party contends are undisputed are "an important tool to identify and address

---

[3] *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

[4] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))

[5] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (quoting *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991) (additional citation and all quotation marks deleted)).

[6] *Id.* (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

the facts at issue on summary judgment: a district court should not have to guess which of the movant's material facts are actually disputed by the non-movant. This is particularly important in complicated litigation."[7] Equally, the Court should not have to guess which facts that the movant contends are material and undisputed.

### III. Scott's Motion for Summary Judgment

Scott moves for summary judgment on the grounds that he and Plaintiff Garcia were both employees of Golden Eagle under the "statutory employer" provision of Utah's Workers' Compensation Act. Therefore, he argues that he is either an employee or an agent of the employer Golden Eagle. As an agent or employee of the statutory employer, Golden Eagle, Scott argues that he is entitled to statutory immunity under the exclusive remedy provisions of the Workers Compensation Act.

Plaintiff Garcia argues that the statutory employer provision only applies to finding employment status for the purposes of coverage for benefits, but that the control test applies for determining employee status for immunity purposes.

There is no actual contract between Scott and Golden Eagle. The Court finds that Scott's materials on summary judgment do not show that there is no material issue of fact on the legal status of their relationship and, therefore, of the applicability of immunity under the Worker's Compensation Act. Accordingly, Scott's Motion for Summary Judgment will be denied.

---

[7]*Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (noting that "[l]ocal rules that are consistent with the national rules have the force of law").

4

IV. Golden Eagle's Motion for Summary Judgment

Golden Eagle does not itself move for summary judgment as a statutory employer but it does argue that if Scott's motion is successful, it should similarly be deemed to be a statutory employer and immune from suit under the law of the case as established through Scott's Motion.[8] Because Scott's Motion will be denied, so should Golden Eagle's to the extent it seeks summary judgment because it is similarly situated to Scott.

Golden Eagle next seeks summary judgment on the ground that under Garcia's version of the facts as presented to dispute Scott's motion, Golden Eagle would not be liable because the "retained control" doctrine would preclude claims against it.

Plaintiff points out that Golden Eagle's motion is not in compliance with the Local Rule DUCivR 56-1(b) because it does not contain a concise statement of the material facts that Golden Eagle, as movant, contends are not subject to genuine dispute. Instead, Golden Eagle submits that under either version of facts argued by the parties to Scott's Motion, that it is entitled to summary judgment. Thus, rather than showing what facts are undisputed and how such undisputed facts entitle it to judgment as a matter of law, Golden Eagle's Motion looks at whether the facts as argued by either of two other parties—Scott and Plaintiff—for Scott's Motion, meet the requirements for Golden Eagle's motion. As noted above, the Court has already found that there are material disputes of fact that preclude summary judgment in favor of Scott.

The Court finds that Golden Eagle's Motion does not meet the requirements for

---

[8]Docket No. 51 at 3.

summary judgment under Fed. R. Civ. P. 56(a) and Rule DUCivR 56-1(b).  As a result, it is not possible to determine what facts Golden Eagle contends are undisputed.  Therefore, Golden Eagle's Motion must be denied.

## V.  Decca's Motion for Summary Judgment

Decca argues that its undisputed facts establish that Scott is its independent contractor, that it did not control the manner of which Scott or Garcia performed their services and, therefore, it is not liable in this case.

Unlike Golden Eagle's Motion, Decca's Motion is properly supported by its statement of undisputed facts, excerpts of depositions, and the affidavit of its president, Barry Ahern. Because the Ahern Affidavit was attached to Decca's Reply Brief, the Court granted Plaintiff additional time to file any opposing materials.

Plaintiff opposes the motion saying that Decca's motion is not supported by some of its factual cites and that there is some testimony by third parties that they believed that Scott was Decca's employee. However, many of the supposed inconsistencies with the record cites are resolved by the submission of the affidavit of Decca's President.

The Court finds that the following facts are undisputed.  Golden Eagle obtained Scott's services through Defendant Decca.  Decca is merely a "warehouse of resumes."[9] Its primary business is providing experienced consultants in the oil and gas industry to well owners. When a request for a consultant comes in, Decca reviews the resumes in its database and selects one or more that may fit the role.  It then discusses those resumes

---

[9] Ahern Decl. ¶ 4.

with the owner of the Well or the prime contractor. By this process, Scott as well as other independent contractors of Decca, were sent to work at the well as on-site supervisors. Scott and/or his company Ed Scott Holdings, work for a number of different consulting companies and was free to accept any job at a well or to reject it.

Decca has no consultants that are its employees but instead all of its consultants are contractors, who mostly operate through their own companies. Scott works through his company Ed Scott Holding. Ed Scott's holding company submitted invoices to Decca for the work he performed and that holding company was paid accordingly by Decca; which in turn added a fee and submitted invoices to Golden Eagle for payment. Decca does not have a written contract with Scott, Ed Scott Holding, Golden Eagle, or any other company operating at the well.

Decca did not provide Scott any tools, equipment, or clothing to use in his work at the well. It does not withhold taxes for Scott or any other of its contractors. It does not provide health insurance, pension, or retirement, sick or vacation pay for Scott or any of its other independent contractors. At the time relevant to this case, it did not require that its independent contractors carry insurance. It did not provide Scott any business or travel expenses. Decca's contractors are responsible to take care of their own affairs regarding taxes, insurance, retirement, etc.

Scott sent daily email reports on the well activities to Golden Eagle. Those reports were also sent to Decca and 6 to 8 other persons or entities. Although it received the email reports, Decca did not have the right to direct, instruct, or control Scott regarding how to perform his job duties at the well site. Decca did not provide Scott any direction regarding

how to run the day-to-day operations at the Well. Decca had no input in selecting DHS as the company providing the drilling rig and its crew, including Garcia. It had no input into the decisions or work that resulted in Garcia's accident. Decca had no ability to and did not ever control the manner in which Garcia was to perform his duties. None of the rig hands employed by DHS at the site had ever heard of Decca.

Decca's President also worked as a consultant for Golden Eagle and was invoiced the same way, but he performed all of his consulting work for Golden Eagle remotely from Canada.

Plaintiff argues that a witnesses, Mr. Hasleby, thought at one time that Scott was a Decca employee. However the testimony of that witness is that he had such an impression, but that he subsequently realized such impression was incorrect.[10] Decca's President testified that he had never discussed Scott's status with Mr. Hasleby.

Plaintiff argues that there is testimony that holding safety meetings was Decca's responsibility. However, the testimony was that Mr. Hasleby thought that holding safety meetings was the responsibility of "Decca, of the Decca engineer or the Decca supervisor and also DHS;" that by "the Decca engineer," or the "Decca supervisor" he meant Scott; or "whoever else was on site;" and that it was "Decca's responsibility with respect that Ed [Scott] was there to make sure that it happened."[11] Regardless, Mr. Hasleby testified that the safety meetings were being held because they were in the reports.[12] The Court finds

---

[10] Hasleby Dep. at 23-24.

[11] *Id*. at 33-34.

[12] *Id.*

this testimony ambiguous and does not show that Decca retained any control over Scott. Plaintiff also cites Decca's president's testimony that Scott called him sometime after Mr. Garcia was injured and told him a DHS employee had been hurt.[13] However, telling Decca's President such information does not show any control or direction of Scott by Decca. Finally, Plaintiff cites the testimony of Decca's President that when Golden Eagle made the recommendation to Decca to withdraw Scott from the project; the decision was made "jointly, Decca, myself [Decca's President] and Golden Eagle."[14] Again, this does not show control of or participation in the manner in which Scott performed his work at the well site. At best, it merely shows that Decca did not itself make the decision to withdraw Scott but consulted jointly with Golden Eagle about Golden Eagle's recommendation to withdraw Scott.

The Court finds that Decca has shown no genuine disputes of material fact that Scott was an independent contractor as to Decca. The Court also finds that Decca has shown that there is no material dispute of fact that it did not retain any control of Scott's work at the site or any other work at the site.

Decca argues that these undisputed facts entitle it to judgment. The Court agrees:

> "Utah adheres to the general common law rule that 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.'" "This general rule recognizes that one who hires an independent contractor and does not

---

[13] Ahern Dep. at 68-69.

[14] *Id.* at 20. Plaintiff's full discussion of this testimony is in its Mem. in Opp. to Scott's Mot. for Sum. Jud. at 9. Page 20 of Mr. Ahern's deposition is Ex. 1 to Docket No. 47.

9

participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the manner or method of performance implemented."[15]

Under this rule, Decca is not liable for the actions of its independent contractor, where it did not participate in or control the manner in which the contractor's work was performed. Therefore, Decca is entitled to summary judgment.

## VI. ORDER

Based on the foregoing, it is hereby

ORDERED that Scott's Motion for Summary Judgment (Docket No. 43) is DENIED. It is further

ORDERED that Golden Eagle's Motion for Summary Judgment (Docket No. 50) is DENIED. It is further

ORDERED that Decca's Motion for Summary Judgment (Docket No. 73) is GRANTED and judgment shall be entered in favor of Decca and against Plaintiffs on all of Plaintiffs' claims.

DATED March 31, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[15] *Magana v. Dave Roth Const.*, 215 P.3d 143, 148 (Utah 2009) (quoting *Thompson v. Jess*, 979 P.2d 322 (quoting Restatement (Second) of Torts § 409 (1965)) (footnotes omitted).

.